**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **KENT WILKE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:19-CV-01698-NCC |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Kent John Wilke ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 13) and Defendant has filed a brief in support of the Answer (Doc. 14). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

**I. PROCEDURAL HISTORY**

Plaintiff filed his application for DIB on April 4, 2016 (Tr. 157-58). Plaintiff was initially denied on May 27, 2016, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 93-97, 99-100). After a hearing, by decision dated July 2, 2018, the ALJ found Plaintiff not disabled (Tr. 14-33). On April 18, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and that Plaintiff has not engaged in substantial gainful activity since September 21, 2015, the alleged onset date (Tr. 19).  The ALJ found that Plaintiff has the following severe impairment: degenerative disc disease of the cervical spine (*Id.*).  Relevant to the current action, the ALJ determined that the objective and other longitudinal evidence of record did not establish that Plaintiff's thyroid disorder has caused more than minimal functional limitations during the relevant period (Tr. 20).  The ALJ concluded that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. 404.1567(b) (*Id.*).[1]  The ALJ found Plaintiff capable of performing past relevant work as a project manager, an information technology manager, a vocational training instructor, and a help desk manager (Tr. 28).  The ALJ determined that these jobs, as generally performed, did not require the performance of work-related activities precluded by Plaintiff's RFC (*Id.*).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate (*Id.*).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ

3

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox*, 495 F.3d at 617.  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of

4

the ALJ, who is the fact finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff asserts that the ALJ's determination that Plaintiff's thyroid condition was a non-severe impairment is not supported by substantial evidence (Doc. 13 at 7-15). Specifically, Plaintiff argues that the ALJ's finding at step two is not supported because medical signs and laboratory findings establish the presence of medically determinable impairments due to Plaintiff's thyroid condition and Plaintiff's treating providers gave disabling opinions of functioning related to the impairments (*Id.*). For the following reasons, the Court finds that Plaintiff's arguments are without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

At step two of the sequential analysis, the ALJ determines whether a claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. Relying on *Bowen v. Yuckert*, 482 U.S. 137 (1987), Plaintiff asserts that the threshold for determining a "severe medical impairment" is a "*de minimis*" standard (Doc. 13 at 9). Indeed, while a claimant has the burden of showing a severe impairment that severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal

5

impact on [his or her] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).

The Court finds that ALJ's determination that Plaintiff's thyroid condition is not a severe impairment to be supported by substantial evidence. As a preliminary matter, contrary to Plaintiff's assertion, the ALJ found Plaintiff's thyroid condition to be a medically determinable impairment but that the objective and other longitudinal evidence of record did not establish that the condition caused more than minimal functional limitations during the relevant time period and was, thus, not severe (Tr. 20). The ALJ devotes nearly two full pages to discussing Plaintiff's thyroid condition in which she clearly describes, acknowledges, and weighs various subjective reports, medications, diagnostic testing, objective medical reports, and medical opinions to determine that Plaintiff's thyroid condition would have more than a minimal impact on his ability to perform his past work (Tr. 20-22). *Caviness*, 250 F.3d at 605.

First, the ALJ properly evaluated Plaintiff subjective complaints and in doing so conducted a thorough review of the relevant medical record. The ALJ explicitly acknowledged Plaintiff's reported symptoms of fatigue and declining cognitive function (Tr. 20). Moreover, the ALJ detailed Plaintiff's statements, indicating Plaintiff alleged chronic fatigue on his application for benefits and has been diagnosed with Hashimoto's disease, a thyroid condition[2] (Tr. 287). Indeed, Plaintiff reported that he stopped working because he could no longer perform the duties required of him (Tr. 54). Plaintiff claims that his cognitive functioning was giving him problems; he would start a task and then forget what the task was in the middle of it (*Id.*).

---

[2] Hashimoto's disease is an autoimmune disorder that can cause an underactive thyroid, or hypothyroidism. A person with hypothyroidism may suffer from many symptoms including tiredness. Nat'l Inst. of Diabetes & Digestive & Kidney Diseases, *Hashimoto's Disease*, https://www.niddk.nih.gov/health-information/endocrine-diseases/hashimotos-disease (last visited Aug. 6, 2020).

6

Plaintiff states he would forget even when following written instructions (*Id.*). Plaintiff claims his issues began in 2013 when he became sick at work (*Id.*). Within a few minutes of feeling sick, Plaintiff was on the floor, could hardly move, and struggled to make it to the restroom where he spent a long period of time being ill (Tr. 55). Plaintiff's supervisor had to drive him home that day (*Id.*). Plaintiff visited his primary care physician who put him on Doxycycline for 10 days (*Id.*). Plaintiff missed roughly a week of work because he could not get out of bed (*Id.*). Plaintiff was able to work for another two years and achieved the highest-ranking performance review before his symptoms worsened (*Id.*). Plaintiff claims that one of the most acute symptoms he experiences is fatigue (Tr. 59). Plaintiff testifies that he falls asleep in awkward moments and places (*Id.*). Plaintiff has trouble driving due to the fatigue and will only travel short distances after rest (*Id.*). Plaintiff drives his kids to school, which is about half of a mile from Plaintiff's residence (Tr. 59, 60). If Plaintiff drives too far, he loses track of where he is going (Tr. 60). Plaintiff helps out with chores "whenever he can" (*Id.*). Plaintiff used to do the dishes daily, but now only does them once per week (Tr. 61). Plaintiff further reports that his fatigue interferes will all physical activity through a lack of energy and exhaustion (Tr. 205).

      The ALJ reviewed Plaintiff's statements regarding the intensity, persistence, and limited effects of his alleged impairments but found them inconsistent with the objective and other longitudinal evidence of record (Tr. 19-20). For example, the ALJ found inconsistencies between Plaintiff's reported symptoms of fatigue and the treatment records that indicate he was not as impaired as he alleged (Tr. 20, 23). Although Plaintiff exhibited extreme fatigue at one examination at his primary care provider's office in March 2016, his mental status examination showed normal affect, intact memory, he was conversant and fully oriented, had normal insight, judgment, and thought processes, and there were no signs of depression, anxiety, or agitation (Tr.

7

290-91). Subsequent mental status examinations from his primary care provider's office consistently indicated no objective deficiencies in any of his mental functions, despite Plaintiff's allegations that his thyroid condition caused extreme fatigue and mental decline (Tr. 302, 510, 513). Additionally, Plaintiff's endocrinologist, Dr. Irini E. Veronikis, M.D., has also indicated that Plaintiff examinations were normal, and that Plaintiff's hypothyroidism seems to be controlled by his medication, "[h]e seems euthyroid[3]" (Tr. 21, 388, 391). Dr. Veronikis further indicated that Plaintiff "has felt better recently" and, at the most recent visit, that Plaintiff would return in a year for follow up (Tr. 389, 391). Plaintiff's own testimony supports that his medications help to alleviate his symptoms, even if they do not entirely eliminate them (Tr. 63-64). Conditions which can be controlled by treatment are generally not considered disabling. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). The ALJ specifically documented consideration of this evidence in evaluating Plaintiff's alleged functional limitations (Tr. 23, 25-26). An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Plaintiff's own self-reports are also inconsistent with his claims of chronic fatigue. On multiple occasions, Plaintiff indicated to treating physician that he had no weakness, depression, memory loss, or mental disturbance (Tr. 283-84, 290, 295, 301). Additionally, the ALJ discusses a general health screening that Plaintiff underwent September 7, 2016 in which Plaintiff reported participating in 60 minutes of exercise five or more days each week (Tr. 21, 281-86 374). This self-reported exercise from Plaintiff further supports the ALJ's determination that Plaintiff's condition is not as severe as alleged. Plaintiff asserts that mobility by itself does not establish

---

[3] Euthyroidism is a condition in which the thyroid gland is functioning normally. Stedman's Medical Dictionary, 30762 (2014).

that one can engage in substantial gainful activity, but the ability to participate in exercise with such regularity is clearly supportive that he is more than just "mobile", and is capable of performing a full range of sedentary and light work (Doc. 13 at 10) (citing *Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir. 1974)).  When presented with evidence that daily activities are inconsistent with Plaintiff's allegations, the ALJ may be consider this evidence in judging the credibility of such complaints.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1038-39 (8th Cir. 2001).  *See also Vance v. Berryhill,* 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility").

     Second, the ALJ properly afforded the opinions of Nurse Kristina Plesons, N.P. ("Nurse Plesons") and Dr. Michael Schoenwalder, M.D. ("Dr. Schoenwalder"), Plaintiff's treating physician,[4] little weight (Tr. 25, 273-76, 287).  When weighing any medical opinion, treating or otherwise, an ALJ must consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source.  20 C.F.R. § 404.1527(c)(1)-(6).  As it relates to Dr. Schoenwalder's opinion, "[a] treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016)

---

[4] The parties do not dispute that Dr. Schoenwalder is Plaintiff's treating physician (*See* Doc. 13 at 12; Doc. 14 at 3).

9

(internal quotations omitted). *See* 20 C.F.R. §§ 404.1527(c), 416.927(c);[5] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

On April 17, 2016, Nurse Plesons opined Plaintiff could perform a range of light work, but could stand for only two hours in an eight-hour workday, stand for less than two hours in an eight-hour workday, would need to shift positions at will, would require unscheduled breaks for 15 minutes, would be off-task 25% of the time, and would be absent four days per month (Tr. 274-75). Nurse Plesons identified the clinical findings and objective signs as being lethargic, decreased ability to hold conversation due to brain fog, and memory impairment (Tr. 273). She noted Plaintiff's treatment included medications to treat hypothyroidism, diet modifications, and hormone therapy (*Id.*). Nurse Plesons and Dr. Schoenwalder also co-signed a narrative statement dated April 4, 2016, stating that Plaintiff's Hashimoto's disease caused chronic fatigue, which made it difficult for him to perform daily activities such as required duties for work (Tr. 287).

As a preliminary matter, the joint opinion of Nurse Plesons and Dr. Schoenwalder may be properly discounted as vague and conclusory. While Nurse Plesons and Dr. Schoenwalder

---

[5] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, here the old regulations apply as Plaintiff's claim was filed in April 2016.

asserted in their letter that Plaintiff's chronic fatigue, as caused by Hashimoto's disease, makes it difficult to perform work activities, they also provided no support for these conclusory findings (Tr. 20, 287). "It is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted). *See also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

      The ALJ found the opinions of Nurse Plesons and Dr. Schoenwalder "not to be consistent with the longitudinal evidence of record, including the objective observations of Dr. Schoenwalder or Nurse Plesons" (Tr. 25). Both providers have consistently noted Plaintiff's physical and mental examinations to be within normal limits, as detailed above (*See generally* Tr. 277-362, 507-20). In fact, Nurse Plesons opined that Plaintiff was able to undergo exercise testing and participate in an exercise program (Tr. 281-86). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam*, 794 F.3d at 983 (8th Cir. 2015). *See also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (finding an ALJ may afford an opinion less weight if it is "inconsistent with or contrary to the medical evidence as a whole"). Plaintiff argues that the ALJ incorrectly placed reliance on Plaintiff's ability to undergo exercise testing and programs and instead suggests that the Eighth Circuit Court of Appeals is clear that a person "is mobile does not suggest he can engage in substantial gainful activity" (Doc. 13 at 10 (citing *McMillian v. Schweicker*, 697 F.2d 215, 221 (8th Cir. 1983)). However, the evidence on record in this case suggests that Plaintiff is far more than merely "mobile," as he was cleared to participate in exercise testing or an exercise

11

program, and he reported participating in 60 minutes of exercise five days per week (Tr. 281-86, 374). Indeed, a significant portion of his treatment by these providers included diet modification (*See, e.g.,* Tr. 285 (explaining the "Wheel of Health" and advising Plaintiff to focus on proper nutrition with an emphasis on a low inflammatory eating plan, one that these providers appear to sell called "Shape Reclaimed"); Tr 294 ("severe symptoms with gluten exposure")). Further, while Plaintiff's initial treatment may have been more frequent and required more counseling of possible interventions, as recently as October 5, 2017, Dr. Schoenwalder indicated, "[e]ncounter for general adult medical examination without abnormal findings," and recommended Plaintiff return in 12 months (Tr. 509-10). Finally, to the extent the co-signed letter suggests Plaintiff is unable to work, a physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017).

In addition to the opinions of Nurse Plesons and Dr. Schoenwalder, the ALJ also considered the neuropsychological evaluation conducted by Michael Oliveri, Ph.D. ("Dr. Oliveri") (Tr. 23-24, 494-98). Dr. Oliveri administered a number of neuropsychological tests and found Plaintiff to be functioning largely within normal limits, including finding his memory to be broadly normal (Tr. 496). Relevant to the current discussion, Dr. Oliveri noted that Plaintiff perceived his memory to be defective even when he performed reasonably well on testing measures (*Id.*). Dr. Oliveri ultimately assessed Plaintiff with an unspecified depressive disorder, with features of underlying anxiety, and recommended Plaintiff consider a trial of treatment for this condition (Tr. 498). While the ALJ primarily reviewed the evaluation in the context of determining whether Plaintiff had a medically determinable neurocognitive disorder or somatic symptom disorder, the ALJ also highlighted the normal mental status examination results, of which Plaintiff's memory was addressed as detailed above (Tr. 24).

In conclusion, the Court finds the ALJ's determination regarding Plaintiff's severe impairments to be based on substantial evidence and consistent with the Regulations and case law. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 29th day of September, 2020.

                                                    /s/ Noelle C. Collins
                                                    NOELLE C. COLLINS
                                                    UNITED STATES MAGISTRATE JUDGE